## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RITA READER,** | : | **Civil No. 1:12-CV-1623** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **CAROLYN W. COLVIN,**[1] | : | |
| **Acting Commissioner of** | : | |
| **Social Security** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

In this case we are asked to consider whether substantial evidence supports an

ALJ's decision denying benefits to the plaintiff, when the ALJ's decision:  (1)

rejected the opinion of the plaintiff's treating physician; (2) relied upon the opinion

of a consulting medical source to conclude that the plaintiff could do light work

without addressing aspects of that opinion which would have prevented the plaintiff

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

from performing light work; and (3) included a form of *ad hoc* lay medical analysis by the ALJ expressed in terms that have been repeatedly rejected and criticized by the courts. Finding that these errors, in combination, lead us to conclude that the ALJ's decision is not supported by substantial evidence, and we will order that this case be remanded for further consideration by the Commissioner.

## II. Statement of Facts and of The Case

The plaintiff, Rita Reader, was 47 years old at the time of the alleged onset of her disability and has a sixth grade education. (Tr. 57, 141, 160.) On January 11, 2010, Reader applied for Social Security disability benefits, alleging an onset of disability beginning in October 2009 based upon a constellation of severe impairments including obesity, degenerative disc disease and fibromyalgia. (Tr. 22.)

Reader's disability claim was supported by the opinion of her primary treating physician, Dr. Kemberling, who had treated Reader for approximately six years and opined that it would be "almost impossible for her, even with accommodations, to hold gainful employment due to her medical problems." (Tr. 249.) Dr. Kemberling consistently described Reader's limitations in terms that were both detailed and disabling. Thus, in January 2010, Dr. Kemberling rated Reader's pain on a 1-to-10 scale, at 8-10 and her fatigue at 9-10. He concluded that in an 8-hour work day, Reader could sit for 1 hour at a time, for a total of 2 hours, could stand/walk for 1

hour at a time, for a total of 2 hours, could frequently lift and carry 5 pounds and could occasionally lift and carry 10 pounds.  Dr. Kemberling found that Reader could not use her arms for reaching including overhead; could not kneel, bend, stoop, or push/pull; and would need to avoid temperature extremes.  (Tr. 307-309, 311.)

In an updated Multiple Impairment Questionnaire dated October 29, 2010, Dr. Kemberling stated that Reader's anxiety caused physical symptoms such as heart racing, shortness of breath, and shaking.  He also noted that Reader's neck pain continued to be burning and stabbing, with her  back pain now referred to her leg. Reader was also experiencing numbness and tingling in her face and persistent joint pain that was exacerbated by sitting, standing, walking, lifting, bending, reaching, working at the computer, and weather changes.  (Tr. 797-799, 804.)

Reader's reported level of pain and discomfort was also corroborated by testing performed by Dr. DelVecchio, her treating rheumatologist.  On April 27, 2010, Dr. DelVecchio examined Reader and found that she experienced pain on 14 of 18 fibromyalgia tender points.  (Tr. 277-78, 455.)

As part of the disability assessment process Reader's physical limitations were also evaluated on May 5, 2010, by Dr. Wendy Rissinger, a State Agency Examining Consultant.  Following this examination, Dr. Rissinger opined that in an 8-hour workday, Reader could stand or walk for a total of 4 hours and could sit 8 hours

3

provided she could alternate sitting/standing at her option.   Dr. Rissinger also

concluded that Reader could frequently lift 10 pounds and could frequently carry 2-3

pounds; could occasionally lift and carry 25 pounds, and could bend, kneel, stoop,

crouch, balance, and climb.   (Tr. 635-636.)   While many of these exertional

restrictions were consistent with an ability to perform light work,[2] at least one of the

exertional restrictions found by Dr. Rissinger–that Reader was limited to carrying 2-3

pounds– would have restricted Reader to performing sedentary work.[3]

On November 18, 2010, a hearing was held before an Administrative Law

Judge (ALJ) on Reader's disability application.   At this hearing, the ALJ received

Reader's medical records.   In addition, Reader and a vocational expert testified at this

proceeding.   (Tr. 53-82.)   At this hearing Reader testified that she stopped working

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

in October, 2009, because it became too difficult and painful for her to carry out her duties and stated that she cannot work because of burning, radiating pain that goes from the base of her skull into her neck, right shoulder, and upper back.  Reader described pain that was constant but varied in intensity, and significantly interfered with her sleep and activities of daily living.  (Tr. 58-62, 67, 69-70.)  Thus, Reader's testimony was entirely consistent with the exertional limits found by her treating physician.

On December 14, 2010, the ALJ issued a decision denying Reader's application for benefits.  (Tr. 17-28.)  In this decision the ALJ found that Reader suffered from the following severe ailments:  obesity, degenerative disc disease and fibromyalgia.  (Tr. 22.)  The ALJ, however, rejected the opinion of Reader's treating physician over the past six years that these ailments were disabling, finding that opinions to be insufficiently supported by treatment records.  (Tr. 23.)  Instead, the ALJ stated that he gave "great weight" to the opinion of the examining state agency physician, Dr. Rissinger.  (Tr. 25.)  Yet, while the ALJ indicated that he afforded Dr. Rissinger's opinion great weight, the ALJ arrived at a residual functional capacity assessment that was, in at least one material respect, inconsistent with Dr. Rissinger's opinion.  Specifically, the ALJ determined that plaintiff retained the residual functional capacity to perform light work "which allows for a change of position from

sitting/standing at least every 20 minutes no climbing ladders/scaffolds or crawling and only occasional kneeling, stooping and balancing." (Tr. 23.) This conclusion was inconsistent with Dr. Rissinger's opinion that Reader was limited to carrying 2-3 pounds, an opinion which would restrict Reader to performing sedentary work. The ALJ's decision did not address, or reconcile, this apparent inconsistency between the reported reliance on Dr. Rissinger's opinion, and the contradictions between that medical opinion and the ALJ's findings.

Finally, the ALJ discounted Reader's own complaints of persistent pain, in a fashion which seemed to express a lay medical opinion, stating:

> In this case, the claimant's case in establishing disability is directly dependent on the element of pain which is of an intractable nature. Pain is subjective and difficult to evaluate, both quantitatively and qualitatively. Nevertheless, most organic diseases produce manifestations other than pain and it is possible to evaluate the underlying processes and degree of resultant impairment by considering all of the symptoms. Generally, when an individual has suffered pain over an extended period, there will be observable signs such as a significant loss of weight, an altered gait or limitation of motion, local morbid changes, or poor coloring or station. In the present case, the claimant has complained of pain over an extended period of time. None of the above signs of chronic pain are evidence. While not conclusory by itself, this factor contributes to the determination that the claimant is not disabled as a result of pain.

(Tr. 26.)

Thus, the ALJ's decision in this case rested on three central findings:  First, the ALJ rejected the opinion of Reader's primary treating physician.  Second, the ALJ purported to place great weight on a consulting examining source, but then without explanation did not include all of the limitations found by that source when reaching a judgment regarding Reader's residual functional capacity.  Finally, the ALJ discounted Reader's complaint based upon a lay, *ad hoc* medical opinion regarding how Reader's pain should manifest itself.

After exhausting her administrative appeals of this adverse ALJ decision, Reader filed this civil action seeking judicial review of the ALJ's disability determination.  (Doc. 1.)  The parties have fully briefed this matter, (Docs. 8 and 9.), and this case is now ripe for resolution.  For the reasons set forth below, we find that it is necessary for this matter to be remanded

### III.   Discussion

#### A.   Standards of Review–The Roles of the Administrative Law Judge and This Court

##### 1.   Initial Burdens of Proof , Persuasion and Articulation for the ALJ

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the administrative law judge (ALJ) and this Court.  At the outset, it is the responsibility of the ALJ in the first

instance to determine whether a claimant has met the statutory prerequisites for

entitlement to benefits.   To receive disability benefits, a claimant must present

evidence which demonstrates that the claimant has an "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if [her]
> physical or mental impairment or impairments are of such severity that
> [she] is not only unable to do [her] previous work but cannot,
> considering [her] age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the immediate area
> in which [she] lives, or whether a specific job vacancy exists for [her],
> or whether [she] would be hired if [she] applied for work.  For purposes
> of the preceding sentence (with respect to any individual), "work which
> exists in the national economy" means work which exists in significant
> numbers either in the region where such individual lives or in several
> regions of the country.

42 U.S.C. § 423(d)(2)(A).

In making this determination the ALJ employs a five-step evaluation process

to determine if a person is eligible for disability benefits.  See 20 C.F.R. § 404.1520.

See also Plummer  v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  If the ALJ finds that

a plaintiff is disabled or not disabled at any point in the sequence, review does not

proceed any further.  See 20 C.F.R. § 404.1520.  As part of this analysis the ALJ must

sequentially determine, first, whether the claimant is engaged in substantial gainful

activity.  If a claimant is not engaged in gainful activity, the ALJ must then determine

at step two whether the claimant has a severe impairment.  If a claimant fails to show

that his impairments are "severe," he is ineligible for disability benefits.  See

Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999).  The Regulations provide that

a "severe" impairment is an "impairment or combination of impairments which

significantly limits your physical or mental ability to do basic work activities."  20

C.F.R. §404.1520.

With respect to this threshold showing of a severe impairment, the showing

required by law has been aptly described in the following terms:  "In order to meet

the step two severity test, an impairment need only cause a slight  abnormality that

has no more than a minimal effect on the ability to do basic work activities.20 C.F.R.

§§ 404.1521,416.921; S.S.R. 96-3p, 85-28.  The Third Circuit Court of Appeals has

held that the step two severity inquiry is a *de minimus* screening device to dispose of

groundless claims.'McCrea v. Comm. of Soc. Sec.,370 F.3d 357, 360 (3d Cir.2004);

Newell v. Comm. of Soc. Sec.,347 F.3d 541, 546 (3d Cir.2003).  'Any doubt as to

whether this showing has been made is to be resolved in favor of the applicant.'  Id."

Velazquez v. Astrue, No. 07-5343, 2008 WL 4589831, *3 (E.D. Pa., Oct. 15, 2008).

Thus, "[t]he claimant's burden at step two is 'not an exacting one.' McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir.2004).

Once this threshold, *de minimus* showing is made, "[i]n step three, the ALJ must determine whether [a claimant's] impairment matches, or is equivalent to, one of the listed impairments. See Plummer, 186 F.3d at 428. If the impairment is equivalent to a listed impairment, then [the claimant] is *per se* disabled and no further analysis is necessary. See id." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). The claimant, "bears the burden of presenting medical findings showing that her impairment meets or equals a listed impairment. Burnett v. Commissioner, 220 F.3d 112, 120 n. 2 (3d Cir. 2000). 'For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.' Sullivan v. Zebley, 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)." Hernandez v. Comm'r of Soc. Sec., 198 F. App'x 230, 234 (3d Cir. 2006). This Step 3 analysis must also be accompanied by a discussion of the evidence which is sufficient to permit informed judicial review. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 120 (3d Cir. 2000).

Finally at Steps 4 and 5, the ALJ must consider whether the claimant's impairment prevents the claimant from doing past relevant work; and whether the

claimant's impairment prevents the claimant from doing any other work.  See 20 C.F.R. § 404.1520.  This disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he is unable to engage in past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  If the ALJ finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed any further.  See 20 C.F.R. § 404.1520.

The ALJ's disability determination must also meet certain basic procedural and substantive requisites.  Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination.  Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence.  Id. at 706-707.  In addition, "[t]he ALJ must indicate

in his decision which evidence he has rejected and which he is relying on as the basis

for his finding." Schaudeck v. Com. of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

## 2. Judicial Review of ALJ Determinations–Standard of Review

Once the ALJ has made a disability determination, it is then the responsibility

of this Court to independently review that finding.  In undertaking this task, this

Court applies a specific, well-settled and carefully articulated standard of review.  In

an action under 42 U.S.C. § 405(g) to review the decision of the Commissioner of

Social Security denying plaintiff's claim for disability benefits, Congress has

specifically provided that the "findings of the Commissioner of Social Security as to

any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. §

405(g).

The "substantial evidence" standard of review prescribed by statute is a

deferential standard of review.  Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

When reviewing the denial of disability benefits, we must simply determine whether

the denial is supported by substantial evidence.  Brown v. Bowen, 845 F.2d 1211,

1213 (3d Cir. 1988); see also Johnson v. Commissioner of Social Sec., 529 F.3d 198,

200 (3d Cir. 2008).  Substantial evidence "does not mean a large or considerable

amount of evidence, but rather such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)."  Johnson, 529 F.3d at 200. See also  Pierce v. Underwood, 487 U.S. 552 (1988).  It is less than a preponderance of the evidence but more than a mere scintilla of proof.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)(quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence."  Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966).  Moreover, in conducting this review we are cautioned that "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.'  Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir.1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801

(10th Cir.1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." <u>Frazier v. Apfel</u>, No. 99-715, 2000 WL 288246, *9 (E.D. Pa. March 7, 2000).  Furthermore, in determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole.  <u>Smith v. Califano</u>, 637 F.2d 968, 970 (3d Cir. 1981).

### 3.   Legal Benchmarks for Assessing Medical Opinions

It is beyond dispute that, in a social security disability case, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." <u>Cotter</u>, 642 F.2d at 704.  This principle applies with particular force to the testimony of a treating physician, testimony that is to be accorded great weight by the ALJ.  In this regard, the legal standards governing our evaluation of this type of evidence are familiar ones.  In <u>Morales v. Apfel</u>, 225 F.3d 310  (3d Cir. 2000), the Court of Appeals for the Third Circuit set forth the standard for evaluating the opinion of a physician stating that:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." <u>Plummer</u> [v. Apfel, 186 F.3d 422, 429 (3d Cir.1999)] (<u>quoting</u> <u>Rocco v. Heckler</u>, 826 F.2d 1348, 1350 (3d Cir.1987)); <u>see also</u> <u>Adorno v. Shalala</u>, 40 F.3d 43, 47 (3d Cir.1994);  <u>Jones</u>, 954 F.2d at 128; <u>Allen v. Bowen</u>,

14

881 F.2d 37, 40-41 (3d Cir.1989); Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988); Brewster, 786 F.2d at 585. Where, as here, the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Plummer, 186 F.3d at 429 (citing Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)). The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. See Adorno, 40 F.3d at 48. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. Plummer, 186 F.3d at 429; Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988); Kent, 710 F.2d at 115.

Id. at 317-318.

Furthermore, when assessing competing views of treating and non-treating physicians, the ALJ and this court are cautioned that:

[A]n ALJ is not free to employ her own expertise against that of a physician who presents competent medical evidence. Ferguson, 765 F.2d at 37 (1985). When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993). The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. See Stewart v. Secretary of H.E.W., 714 F.2d 287, 290 (3d Cir.1983).Treating physicians' reports should be accorded great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987); 20 C.F.R. § 404.1527(d)(2) (providing for controlling weight where treating physician opinion is well-supported by medical evidence and not inconsistent with other substantial evidence in the record.) An ALJ may reject a treating physician's opinion outright only on the basis of

15

contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. <u>Newhouse v. Heckler</u>, 753 F.2d 283, 286 (3d Cir.1985).

<u>Plummer v. Apfel</u>, 186 F.3d 422, 429 (3d Cir.1999).

Similarly, the Social Security Regulations state that when the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," it is to be given controlling weight. 20 C.F.R.  § 404.1527(c)(2). When the opinion of a physician is not given controlling weight, the length of the treatment relationship and the frequency of examination must be considered.  The Regulations state:

> Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a non-treating source.

20 C.F.R.  § 404.1527(c)(2)(I).

Additionally, the nature and extent of the doctor-patient relationship is considered. The Regulations state:

> Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the

kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

20 C.F.R. § 404.1527(c)(2)(ii).

Given this recognition of the great weight that should attach to the professional judgment of treating physicians, it is axiomatic that an ALJ must provide an adequate explanation for any decision which chooses to disregard a treating physician's findings regarding illness, impairment and disability. Moreover, when an ALJ fails to adequately explain why a treating physician's medical assessment has been discounted, a remand for further development of the factual record is proper. See e.g., Burnett, 220 F.3d at 119 (failure to adequately discuss competing medical evidence compels remand of ALJ decision); Schaudeck, 181 F. 3d at 429; Allen v. Bowen, 881 F.2d 37, 40-41 (3d Cir. 1989); Belotserkovskaya v. Barnhart, 342 F.Supp.2d 335 (E.D. Pa. 2004). Thus, as one court has aptly observed:

"An ALJ may not reject a physician's findings unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir.1993) (internal quotation marks, citations and indication of alteration omitted). Where the findings are

17

those of a treating physician, the Third Circuit has "long accepted" the proposition that those findings "must [be] give[n] greater weight ... than ... the findings of a physician who has examined the claimant only once or not at all." Id. (citations omitted)  An ALJ may reject a treating physician's opinion on the basis of contradictory medical evidence, see Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir.1988), and may afford a medical opinion more or less weight depending upon the extent to which supporting explanations are provided, see Mason, 994 F.2d at 1065 ("[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best"), and whether the reporting doctor is a specialist, see Id. at 1067. An ALJ may not, however, reject medical determinations by substituting his own medical judgments. See Frankenfield, 861 F.2d at 408.

Terwilliger v. Chater, 945 F.Supp. 836, 842-3 (E.D.Pa.1996).

There is a necessary corollary to this rule governing ALJ treatment of medical evidence.  It is also well-settled that:

Because they are not treating medical professionals, ALJs cannot make medical conclusions in lieu of a physician:  ALJs, as lay people, are not permitted to substitute their own opinions for opinions of physicians. This rule applies to observations about the claimant's mental as well as physical health.  As the Seventh Circuit stated, "[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor." Accordingly, "[a]n ALJ cannot disregard medical evidence simply because it is at odds with the ALJ's own unqualified opinion."  Nor is the ALJ allowed to "play doctor" by using her own lay opinions to fill evidentiary gaps in the record.  Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Courts, § 6:24 (2013) (citations omitted).

Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 779 (W.D. Pa. 2013).

**B.      The ALJ's Decision Is Not Supported By Substantial Evidence and
        Will be Remanded**

Judged against these legal guideposts, we find that the ALJ erred in this case

in three ways, errors which collectively compel a remand of this case for further

consideration.

First, we find that the ALJ erred when he discounted Reader's own complaints

of persistent pain in a manner which seemed to express a lay medical opinion, by

stating:

> In this case, the claimant's case in establishing disability is directly
> dependent on the element of pain which is of an intractable nature.  Pain
> is subjective and difficult to evaluate, both quantitatively and
> qualitatively.    Nevertheless,   most   organic   diseases   produce
> manifestations other than pain and it is possible to evaluate the
> underlying processes and degree of resultant impairment by considering
> all of the symptoms.  Generally, when an individual has suffered pain
> over an extended period, there will be observable signs such as a
> significant loss of weight, an altered gait or limitation of motion, local
> morbid changes, or poor coloring or station.  In the present case, the
> claimant has complained of pain over an extended period of time.  None
> of the above signs of chronic pain are evidence.  While not conclusory
> by itself, this factor contributes to the determination that the claimant is
> not disabled as a result of pain.

(Tr. 26).

We are constrained to note that this precise language has been used in the past

by ALJs to discount complaints of pain, and has been roundly condemned by the

courts.  Thus, in the past we have criticized this type of sweeping generalization on

19

two different grounds, finding that it is either an unsupported factual conclusion or an improper lay medical opinion.  Witkowski v. Colvin, 1:CV-13-0161, 2014 WL 580204 (M.D. Pa. Feb. 12, 2014), comparing Kostelnick v. Astrue, No. 12–CV–901, 2013 WL 6448859, at *7 (M.D.Pa. Dec. 9, 2013); Kinney v. Astrue, No. 11–CV–1848, 2013 WL 877164, at *2–3 (M.D.Pa. Mar. 8, 2013); Ennis v. Astrue, No. 11–CV–1788, 2013 WL 74375, at *8 (M.D.Pa. Jan. 4, 2013); Hughes v. Astrue, No. 10–CV–2574, 2012 WL 833039, at *12–13 (M.D.Pa. Mar. 12, 2012); Daniels v. Astrue, No. 08–CV–1676, 2009 WL 1011587, at *17 (M.D.Pa. April 15, 2009)(finding language to be unsupported factual finding); with Ferari v. Astrue, No. 07–CV–1287, 2008 WL 2682507, at *7 (M.D.Pa. July 1, 2008); Morseman v. Astrue, 571 F.Supp.2d 390, 396–97 (W.D.N.Y.2008) (finding this language to be an improper lay medical opinion).

The ALJ's reliance upon this erroneous boilerplate language is particularly troublesome in this case which involved a diagnosis of fibromyalgia since fibromyalgia is notable its lack of objective diagnostic signs.  In fact, in Foley v. Barnhart, 432 F.Supp.2d 465 (M.D.Pa. 2005), this Court recognized that with respect to determinations involving fibromyalgia, it is reversible error to require objective findings, since the disease itself eludes such measurement.  Id. at 475.  While we appreciate the difficulties and challenges which assessment of the disabling impact

of fibromyalgia entails, in our view labels cannot substitute for analysis in this field. Therefore, an ALJ cannot dismiss the diagnosis and analysis of a treating source with years experience caring for a claimant, and the claimant's medically supported description of intractable pain, by simply substituting his own medically invalid lay opinion, particularly when the treating source diagnoses are recognized as disabling conditions.  Foley v. Barnhart, 432 F.Supp.2d 465  (M.D.Pa. 2005).

Second, in our view the ALJ compounded this initial error by placing "great weight" on the opinion of the consulting examining physician, Dr. Rissinger, but then reaching a determination that Reader could perform light work.  As we have noted, this ALJ conclusion is inconsistent with Dr. Rissinger's opinion that Reader was limited to carrying 2-3 pounds, a medical finding which would confine Reader to performing sedentary work.  The ALJ's decision does not address, or reconcile, this apparent inconsistency between the ALJ's reported reliance on Dr. Rissinger's opinion, and the contradictions between that medical opinion and the ALJ's findings.

As a general rule, a non-treating medical source's opinion is often afforded less weight than that of a treating physician.  See Griffies v. Astrue, 855 F. Supp. 2d 257, 275 (D. Del. 2012)(collecting cases).  Here, whatever reliance could have been placed upon the non-treating source opinion is largely undermined by the unexplained failure

of the ALJ to reach conclusions consistent with that non-treating source's opinion. This unexplained inconsistency, therefore, also compels a remand of this matter.

Finally, in light of ALJ's erroneous reliance on his own lay medical opinion, and the internally inconsistent treatment of the consulting physician's opinion, we conclude that the ALJ's opinion also fails to adhere to cardinal principle guiding disability eligibility determinations that the ALJ should give a treating physician's reports great weight, especially "when the[] opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.1999) (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir.1987)).  In this case, it appears that the ALJ discounted the medical opinion of a treating source based upon a medically invalid lay opinion regarding the manifestations of pain, and a non-treating source opinion which the ALJ said deserved great weight but which the ALJ inexplicably declined to fully follow.  Accordingly, the ALJ's failure to reconcile these inconsistencies compels us to recommend that this case be remanded for further proceedings to develop and evaluate of the medical record, as the ALJ's decision lacks sufficient explanation, and appears to be unsupported by substantial evidence in the administrative record.  Yet, while case law plainly calls for a remand and further proceedings by the ALJ in this case further assessing Reader's claim under the five-

step sequential analysis applicable to such claims in accordance with this opinion,

nothing in this opinion should be construed as suggesting what the ultimate outcome

of that final and full analysis should be. Instead, we simply direct that this analysis

on remand reconcile these inconsistencies, adequately address the medical opinion

evidence, and refrain from any lay medical judgments.

     An appropriate order will follow.

***<u>S/Martin C. Carlson</u>***
Martin C. Carlson
United States Magistrate Judge

DATE: April 24, 2014